UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. MITCHELL,<br>CDCR #H38255,<br><br>                                        Plaintiff,<br><br>vs.<br><br>M. RYER, Corrections Sergeant.;<br>D. MORRIS, Corrections Counselor;<br>MCWAY, Corrections Officer;<br>F. SALAS, Corrections Officer; S. ESHO,<br>Corrections Officer; J. VALENCIA,<br>Corrections Officer; N. CANELA,<br>Licensed Vocational Nurse; WADDLE,<br>Corrections Lieutenant; J. DURAN,<br>Corrections Officer; A. SELL, Corrections<br>Lieutenant; M. ARREZOLA, Corrections<br>Officer; D. STANLEY, Corrections<br>Sergeant,<br><br>                                        Defendants. | Case No.:  23-CV-661-TWR (MSB)<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A** |

   Presently before the Court is Plaintiff John Mitchell's civil rights Complaint filed pursuant to 42 U.S.C. § 1983.  (ECF No. 1, "Compl.")  Plaintiff is currently incarcerated
///

1

at Mule Creek State Prison,[1] is proceeding pro se, and has paid the civil filing fee. (*See* ECF No. 3.) He alleges that while he was incarcerated at R.J. Donovan Correctional Facility ("RJD"), Defendants—various RJD and Kern Valley State Prison personnel—violated his First, Eighth, and Fourteenth Amendment rights. (*See* Compl. at 2–3, 11–21.)

## I.   Legal Standards

### A.   *Screening Pursuant to 28 U.S.C. § 1915A*

28 U.S.C. § 1915A requires "early review—before docketing [] or [] as soon as practicable after docketing—for all complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (internal quotation marks omitted). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who sue a governmental entity, officer, or employee. *See, e.g.*, *Resnick v. Hayes*, 213 F.3d 443, 446–47 (9th Cir. 2000). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

"Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires that a

---

[1] When Plaintiff filed his Complaint, he was housed at California State Prison, Sacramento. (Compl. at 1.) From the Court's review of the California inmate locator, Plaintiff is now housed at Mule Creek State Prison. *See* CDCR Inmate Locator, https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=H38255 (last visited Aug. 21, 2023); *see also McCoy v. Le*, No. 3:21-cv-1755-BAS-LL, 2021 WL 5449004, at *1 n.2 (S.D. Cal. Nov. 22, 2021) (noting the Court may take judicial notice of public records available on online inmate locators). Plaintiff has not filed a notice of a change of address as he is required to do. *See* S.D.Cal. CivLR 83.11(b). Plaintiff is warned that "[i]f mail directed to a pro se plaintiff by the Clerk at the plaintiff's last designated address is returned by the Post Office, and if such plaintiff fails to notify the Court and opposing parties within 60 days thereafter of the plaintiff's current address, the Court may dismiss the action without prejudice for failure to prosecute." *Id.*

complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B.  42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II. Plaintiff's Allegations

Plaintiff alleges that in preparation for an upcoming parole hearing, he asked Defendant Morris to update his file with his college records and rehabilitation efforts. (Compl. at 5.) When Morris failed to do so, Plaintiff told her he was going to file a federal lawsuit and a staff complaint against her. (*Id.*) According to Plaintiff, Morris told Defendants Salas and Esho about Plaintiff's intentions so they "entered his cell and destroyed pictures, and left legal documents in disarray." (*Id.*) When he asked them why they had done that, Plaintiff claims Esho said, "Shut the fuck up you bitch." (*Id.*) When Plaintiff told Esho he was going to report his behavior to the program office, Esho called him a "rat" and threatened him with physical harm. (*Id.*)

///

Plaintiff reported threats from Salas and Esho to Defendant Valencia, told Valencia he had "safety concerns," and asked to be housed in Administrative Segregation ("Ad Seg"). (*Id.*) Valencia allegedly told Plaintiff to go back to his cell and pack up his property, but when Plaintiff got back to his cell and asked Salas and Esho for boxes, they called him a "bitch," and told him to "get the fuck out of here." (*Id.*) Plaintiff exchanged verbal insults with Salas and Esho, who again loudly called him a "rat." (*Id.* at 6.) Plaintiff told Salas and Esho "he was not scared of them and that he would 'not tell if they gave him a fair fight.'" (*Id.*) As Plaintiff was about to pack up his property, he saw Salas and Esho get up from their desks and walk toward him; Salas was shaking his pepper spray can. (*Id.*) Salas then pepper sprayed Plaintiff from about ten feet away and continued to spray him "directly into his hair and side of his face." (*Id.*) Plaintiff tried to block the spray and backed into his cell saying, "Okay, okay, I'm cool." (*Id.*) Plaintiff asserts Salas then grabbed him by the hair, dragged him out of the cell, slammed him face first onto the ground, sat on his back, and repeatedly slammed his face and head into the ground. (*Id.*) As he was doing this, Plaintiff claims Salas spoke in his ear, "[You] thought you were going to get a fair one mutha fucker, you squared off on me." (*Id.*) Salas began choking Plaintiff and shifting his weight in an attempt to smother him. (*Id.*) Plaintiff lost consciousness but was awakened by Esho kicking him in the testicles and twisting his legs, injuring his knee. (*Id.* at 6–7.) McWay then placed a spit mask over Plaintiff's head, which Plaintiff claims was positioned to block his airway. (*Id.*) Plaintiff further alleges Ryer, Valencia, and McWay were present during the assault, and that Morris watched it from her office. (*Id.* at 19–21.)

After the assault, Plaintiff was examined by Defendant Canela, a licensed vocational nurse, who Plaintiff claims submitted a false medical report stating he had no injuries. (*Id.* at 7.) Plaintiff alleges that he was taken to a hospital after two other nurses examined him and found injuries and bleeding. (*Id.*) McWay took pictures of Plaintiff while he was being transported as well as pictures of Salas and Esho, but did not take pictures of the "bloody floor" where the incident took place. (*Id.*)

As a result of this incident, Plaintiff was assigned an Investigative Employee ("IE"), Bell, for a Rules Violation Report ("RVR") hearing, but before an RVR hearing could be conducted at RJD, Plaintiff was transferred to Kern Valley State Prison ("KVSP"). (*Id*. at 8.)  There, Defendant Arrezola was assigned as Plaintiff's IE. (*Id*.)

On November 10, 2019, Defendant Duran came to Plaintiff's cell and asked him if he wanted Duran to relay his witness requests and documents to Bell. (*Id*.)  Plaintiff gave Duran a list of questions for the witnesses and his medical records, but when Duran later gave him the prepared IE report, the medical records were not attached. (*Id*. at 9.)

On December 14, 2019, Plaintiff attended his RVR hearing. (*Id*.)  Defendant Sell was the Senior Hearing Officer ("SHO"). (*Id*.)  Plaintiff attempted to tell Sell that there were witness statements and medical records he wanted her to consider that were not part of the record, but she refused to consider that information. (*Id*.)  Plaintiff was found guilty of a rules violation and was punished with 150 days of lost custody credits and additional custody level points. (*Id*.)  On September 9, 2021, relying on the RVR, the parole board denied him parole. (*Id*. at 10.)

**III.   Analysis**

   *A.   Count One: Eighth Amendment Excessive Force*

Plaintiff's allegations against Salas, Esho, and McWay state a plausible Eighth Amendment excessive force claim.  Unnecessary and wanton infliction of pain violates the Eighth Amendment's Cruel and Unusual Punishment Clause. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  In the context of prison officials who are alleged to have used excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6–7; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 7).  "It is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents [such as pepper spray] in quantities greater

/ / /

than necessary or for the sole purpose of infliction of pain.'" *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (citations omitted).

Here, Plaintiff's claim that Defendant Salas pepper sprayed him in his hair and face while he was standing in his cell and continued to do so even though Plaintiff was backing into his cell saying, "Okay, okay, I'm cool," (*see* Compl. at 6, 11–12), plausibly alleges that Salas pepper sprayed Plaintiff "for the sole purpose of infliction of pain," *Furnace*, 705 F.3d at 1028.  Further, Plaintiff's claim that Salas slammed him face first onto the ground, sat on his back, slammed his face and head into the ground, choked him, and shifted his weight in an attempt to smother Plaintiff also plausibly allege Salas was motivated not by a good-faith effort to discipline Plaintiff, but rather to maliciously and sadistically cause harm. (*See* Compl. at 6, 11–12).  *See Wilkins*, 559 U.S. at 37 (finding district court erred when dismissing a pro se prisoner's complaint for failing to state a claim where the plaintiff alleged the defendant "punched, kicked, kneed, choked, and body slammed" him without provocation).  The same is true of Plaintiff's claim that Esho kicked him in the testicles and twisted his legs while he was unconscious, injuring his knee.  (*See* Compl. at 6, 11–12.)  Finally, his claim that McWay placed a spit mask over his head and positioned it to block his airway also plausibly alleges McWay's use of the spit mask was malicious and sadistic. (*See id*.)  *See Hudson*, 503 U.S. at 5.  Accordingly, the Court finds Plaintiff's excessive force allegations are sufficient to survive the "low threshold" set for *sua sponte* screening by 28 U.S.C. § 1915(e)(2) and § 1915A(b).  *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### B.     Count Two: First Amendment Retaliation

Plaintiff alleges Salas, Esho, McWay, and Canela violated his First Amendment rights when they searched his cell, used excessive force, and created false incident and medical reports in retaliation for Plaintiff reporting Morris's failure to update his file and for reporting Salas's and Esho's threats. (Compl. at 13–18.)  He also claims McWay failed to take photos of blood on the floor where the attack took place in retaliation for Plaintiff's actions. (*Id*.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff's Complaint contains sufficient factual allegations to show he engaged in protected conduct by reporting the alleged threats from Salas and Esho. (Compl. at 13.) Plaintiff's allegations that Salas and Esho filed false incident reports and used excessive force against him are sufficient to plausibly allege Plaintiff's First Amendment rights were chilled, and there is no legitimate correctional goal advanced by Salas's and Esho's alleged actions. Further, the Complaint contains sufficient facts to plausibly allege Salas's and Esho's actions were taken because of Plaintiff's protected conduct: Plaintiff alleges that shortly after he told Morris he was going to report her for failing to update his file, Salas and Esho searched his cell and threatened him. (*Id*. at 5.) When he reported Salas's and Esho's threats, they used excessive force against him and created the false incident reports. (*Id*.) *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."). Accordingly, the Court concludes Plaintiff has plausibly alleged a First Amendment claim for retaliation against Salas and Esho. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

Plaintiff, however, has not stated a plausible retaliation claim against Defendant Canela or McWay. Plaintiff has not demonstrated that Canela or McWay submitted false medical and incident reports, or that McWay failed to photograph the bloody floor, *because* of any protected conduct by Plaintiff. *Rhodes*, 408 F.3d at 567–68. Plaintiff does not allege that either Canela or McWay knew he had threatened to report Morris for failing to

include documents in his file or that he had reported Salas and Esho for threatening him. He simply states that they submitted the false reports and that McWay failed to photograph the bloody floor. (Compl. at 14, 16.) That is not sufficient to state a viable retaliation claim. *See Rhodes*, 408 F.3d at 567–68. Accordingly, Plaintiff's retaliation claims against Canela and McWay must be dismissed. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### C. Count Two: Due Process

Plaintiff alleges that Arrezola and Duran violated his due process rights by interfering with his RVR hearing. (Compl. at 14–18.) Specifically, he claims Arrezola and Duran removed medical documents from his RVR file and did not contact Bell, who was Plaintiff's designated investigative employee at RJD, to obtain information about Plaintiff's witnesses. (*Id.*) He also alleges Waddle permitted the removal of the documents and found that the witnesses and questions Plaintiff wanted to ask at the hearing were irrelevant. (*Id.* at 15.) He further alleges that Waddle's actions led Sell, the SHO, to decide not call or question any of Plaintiff's witnesses or to consider Plaintiff's medical documents. (*Id.*) Finally, he alleges Defendant Stanley approved the IE report. (*Id.* at 9.)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. O'Connor*, 515 U.S. 472, 484 (1995). If an inmate identifies a protected liberty interest, due process requires: (1) 24-hour advanced written notice of the charges against him, (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence in his defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or the matter is

complex, and (5) a "sufficiently impartial" factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974).

Even assuming Plaintiff has alleged facts sufficient to invoke a protected liberty interest under *Sandin*, he has not pled sufficient facts to plausibly show he was denied the procedural protections the Due Process Clause requires. *See Iqbal*, 556 U.S. at 678; *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Exhibit A to Plaintiff's Complaint shows he was given 24-hour advance notice of the charges, (ECF No. 1-2 at 2–9), a written explanation of the result of the RVR hearing by the SHO, (*id.* at 14–16), and an opportunity to call witnesses and submit documentary evidence, (*id.* at 9–10). There are no allegations in his Complaint that show Plaintiff is illiterate, that the matter is complex, or that the SHO was not "sufficiently impartial." And while Plaintiff must be afforded the *opportunity* to present witnesses and documents, the Due Process Clause does not guarantee an absolute right to do so. *See Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses . . . . [for reasons such as] irrelevance [or] lack of necessity . . . ."); *Graves v. Knowles*, 231 F. App'x 670, 672 (9th Cir. 2007) (stating that an SHO does not violate due process by denying a prisoner's request to call witnesses if the SHO deems them to be irrelevant or unnecessary); *Thompson v. Macomber*, No. 2:14-cv-2501 JAM KJN P (TEMP), 2016 WL 3344474, at *10 (E.D. Cal. June 15, 2016) (same). Prisoners also do not have a "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez*, 334 F.3d at 860 (citation omitted).

Further, to the extent Plaintiff alleges the submission of false incident reports by Salas, Esho, or McWay violated his due process rights, he has not stated a plausible § 1983 claim. There is no due process right to be free from false accusations or false reports by prison officials. *See Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014); *Johnson v. Felker*, No. 2:12-cv-02719-GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification

of a [rules violation] report does not give rise to a claim under § 1983."); *Muhammad v. Rubia*, No. C 08-3209-JSW (PR), 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983."). Accordingly, Plaintiff has failed to state a plausible due process claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### D.     Count Three: Eighth Amendment Failure to Protect

Plaintiff also alleges Ryer, Valencia, Morris, and McWay violated his Eighth Amendment rights by failing to protect him against Salas and Esho. (Compl. at 19–21.) He claims Ryer and Valencia knew that sending him back to his cell to pack his boxes posed a substantial risk to his safety because they knew Salas and Esho had a history of using excessive force. (*Id.* at 19.) Plaintiff also alleges Morris and McWay knew Salas and Esho would retaliate against him after she told them that Plaintiff was going to report her for not updating his file. (*Id.* at 20.)

"The Eighth Amendment requires prison officials to protect inmates from violence." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). In order to state a plausible Eighth Amendment claim for relief, however, a Plaintiff must allege facts sufficient to show that Defendants acted with "deliberate indifference." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *see Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1076). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

With respect to Morris and McWay, Plaintiff's allegations are too conclusory to state a plausible § 1983 claim. Plaintiff must provide facts, for example, to show how Morris

and McWay knew that Salas and Esho would assault him, what Salas and Esho did to alert them to the risk they presented to Plaintiff, and what they did or failed to do that put him at risk. *See Williams v. Adams*, No. 1:19-cv-01058-GSA-PC, 2020 WL 13251918, at *3 (E.D. Cal. Aug. 24, 2020) (concluding that Plaintiff's statement that a defendant "knew through personal observation, knowledge and history, and other sources that defendant . . . would use excessive force to assault a prisoner as discipline" was insufficient to state a plausible Eighth Amendment claim). Without such facts, Plaintiff has not plausibly alleged Morris, or McWay acted with deliberate indifference, i.e., that they knew of and disregarded an excessive risk to his health and safety. *See Toguchi*, 391 F.3d at 1057.

Plaintiff's allegations against Ryer and Valencia are a closer call. Plaintiff alleges that after he told Ryer and Valencia that Salas and Esho had threatened him, Ryer and Valencia alerted Salas and Esho about Plaintiff's report, then sent him back to his cell to pack his boxes for a transfer to Ad Seg, exposing him to the risk they knew Salas and Esho posed to him. (Compl. at 19.) While Plaintiff may have sufficiently alleged Ryer and Valencia were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," Plaintiff has not provided enough factual detail regarding how or why Ryer and Valencia actually "drew the inference" that Salas and Esho were a sufficiently serious and immediate threat to Plaintiff. *Toguchi*, 391 F.3d at 1057. Accordingly, he has not plausibly alleged an Eighth Amendment failure to protect claim against Ryer and Valencia. *See Iqbal*, 556 U.S. at 676–77.

Finally, Plaintiff alleges Morris, Ryer, and Valencia violated his Eighth Amendment rights when they failed to intervene and stop Salas and Esho from assaulting him. (Compl. at 19–20.) "[A] prison guard has an affirmative duty to intervene on behalf of a prisoner if other officers are violating the prisoner's constitutional rights in his presence, or if he knows that the prisoner's rights are being violated," but only if the officer had an opportunity to intercede. *Tompkins v. Stephens*, No. CIV S-07-2346 GEB EFB P, 2011 WL 3875643, at *10 (E.D. Cal. Sept. 2, 2011) (first citing *Robbins v. Meecham*, 60 F.3d

1436, 1442 (9th Cir. 1995); and then citing *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)).  While Plaintiff alleges Morris, Ryer, and Valencia observed Salas and Esho assaulting him, he has alleged no facts to show they were in a position to intervene. Plaintiff only states that Ryer and Valencia were "present," and that Morris watched the assault from her office.  (Compl. at 19–20.)  Without more, these allegations are insufficient to plausibly allege Morris, Ryer, and Valencia violated Plaintiff's Eighth Amendment rights by failing to intervene and stop Salas and Esho from assaulting him. *See Iqbal*, 556 U.S. at 676–77.

**V.     Conclusion**

For the foregoing reasons, the Court concludes Plaintiff has plausibly stated an Eighth Amendment excessive force claim against Salas, Esho, and McWay, and a First Amendment retaliation claim against Salas and Esho.  The Court, however, **DISMISSES** Plaintiff's First Amendment retaliation claims against Canela and McWay, his Fourteenth Amendment due process claims, and his Eighth Amendment failure to protect claims for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

Because Plaintiff is proceeding pro se, the Court must give him leave to amend his Complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint [cannot] be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).  Accordingly, the Court **GRANTS** Plaintiff <u>forty-five (45) days from the date of this Order</u> in which to either: (1) file a Notice of Intent to Proceed with his Eighth Amendment excessive force claims against Salas, Esho, and McWay and his First Amendment retaliation claims against Salas and Esho only; or (2) file an amended complaint correcting all the deficiencies of the pleading identified by the Court in this Order.

If Plaintiff chooses to proceed with his Eighth Amendment excessive force claims against Defendants Salas, Esho, and McWay and his First Amendment retaliation claims

against Salas and Esho only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendants Salas, Esho, and McWay and dismiss the remaining First, Fourteenth, and Eighth Amendment claims.

If Plaintiff chooses to file an amended complaint correcting the deficiencies outlined in this Order, *his Amended Complaint must be complete in itself without reference to his original pleading. See* S.D.Cal. CivLR 15.1(a). *Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be considered waived if not repled). Plaintiff's Amended Complaint must be titled "First Amended Complaint," contain S.D. Cal. Civil Case No. 23-cv-00661-TWR-MSB in its caption, and comply with both Federal Rule of Civil Procedure 8 and Civil Local Rule 8.2(a).

In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983, for his use and convenience should he choose to amend his Complaint.

**IT IS SO ORDERED**.

Dated: August 21, 2023

_____
Honorable Todd W. Robinson
United States District Judge